# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

JANE BONILLA-GONZÁLEZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 17-1118 (MEL)

## OPINION AND ORDER

Pending before the court is Jane Bonilla González's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. Plaintiff—who applied for disability alleging polyarthralgia, polymyalgia, carpal tunnel syndrome, cervical and lumbar discogenic disease, obesity, and calcified tendonitis—challenges the administrative law judge's decision with regard to step four of the sequential process.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed an application for Social Security benefits alleging that on December 1, 2010 ("the onset date"), she became unable to work due to disability. Tr. 554.[1] Plaintiff met the insured status requirements of the Social Security Act through September 30, 2012. Tr. 17. Prior to becoming unable to work, Plaintiff was an office clerk. Tr. 23. The claim was denied on February 1, 2013, and upon reconsideration. Tr. 84, 88. Thereafter, Plaintiff requested a hearing, which was held on May 7, 2015 before Administrative Law Judge Gerardo Picó

---

[1] "Tr." refers to the transcript of the record of proceedings.

(hereafter "the ALJ"). Tr. 30. On May 29, 2015, the ALJ issued a written decision finding that Plaintiff was "not under a disability, as defined in the Social Security Act, at any time from December 1, 2010, the alleged onset date, through September 30, 2012, the date last insured." Tr. 23–24. Thereafter, Plaintiff requested review of the ALJ's decision. Tr. 8. Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1–3. Plaintiff filed a complaint on January 26, 2017. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 23, 26.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971).  The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).  Moreover, a determination of substantiality must be made based on the record as a whole.  See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id.  Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987).  An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that the plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether the plaintiff's RFC, combined with her

age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III. THE ALJ'S DETERMINATION

In the case at hand, the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 1, 2010. Tr. 17. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had polyarthralgia, carpal tunnel syndrome with related surgeries, cervical and lumbar degenerative disc disease, calcified tendonitis, C5-C6 right radiculopathy, right foraminal straightening, and obesity. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 18. Next, the ALJ determined that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant was limited to lift and carry 20 pounds occasionally and 10 pounds frequently, sit and stand six hours each in an 8-hour workday, and walk six hours each in an 8-hour workday. The claimant retained the ability to frequently climb ramps and stairs, and to balance, stoop, kneel, and crouch. [S]he was also able to occasionally climb ladders, ropes and scaffolds, and to crawl. The claimant also retained the capacity to frequently handle with the right hand.

Id. At step four, the ALJ presented Plaintiff's RFC limitations to a vocational expert. The vocational expert testified that Plaintiff can perform past relevant work as an office clerk. Tr. 51. Because Plaintiff can perform past relevant work, the ALJ concluded that she is not disabled. Tr. 23.

5

**IV. ANALYSIS**

Plaintiff challenges the ALJ's decision with regard to step four of the sequential process. First, Plaintiff argues that the ALJ erroneously discounted the opinion of Dr. German Malaret, the medical expert, when determining her RFC. Second, Plaintiff argues that the ALJ did not consider that she underwent carpal tunnel release (CTR) surgery on her left hand. Third, Plaintiff argues that the ALJ improperly interpreted "raw" medical evidence in making his RFC finding.

    **1. Plaintiff's claim that the ALJ erroneously discounted the medical expert's opinion.**

In his opinion, the ALJ stated that he gave little weight to Dr. Malaret's opinion because it "came after extensive cross-examination by the claimant's representative on this issue, *and* given the weight considered to the opinion of Dr. Berríos. *Moreover*, the right shoulder calcification that [Dr. Malaret] identifie[d] as one of the claimant's impairments was diagnosed after the [date last insured]." Tr. 21 (emphasis added). Plaintiff contends that the ALJ should not have discounted Dr. Malaret's opinion just because that opinion resulted from cross-examination by Plaintiff's counsel. However, assuming *arguendo* that the ALJ erred in giving only partial weight to Dr. Malaret's opinion because it was obtained via cross-examination, any error was harmless because the ALJ provided two additional bases for discounting Dr. Malaret's opinion. First, the right shoulder calcification that Dr. Malaret identified was diagnosed after the date last insured. See Artis v. Barnhart, 97 F. App'x 740, 741 (9th Cir. 2004) (emphasis added) ("[Plaintiff] bears the burden of establishing the existence of a severe impairment, and ultimately

disability, *prior to the last date insured*.").[2] Second, Dr. Malaret's opinion relied on that of the treating physician, Dr. Carmen Berríos, which the ALJ also discounted.

The disability determination process generally gives "more weight to medical opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). However, the ALJ is not *required* to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2–3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210–211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)). Specifically, the ALJ may disregard the treating physician's opinion when it is "not supported by medically acceptable clinical laboratory techniques, or [is] otherwise unsupported by the evidence." Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221–22 (D.P.R. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)). This remains true regardless of whether the source of the evidence is a non-treating doctor. Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 130 (1st Cir. 1981)).

In his opinion, the ALJ stated that he

> afford[ed] partial weight to the opinion of Dr. Berríos . . . . According to the doctor, the claimant is extremely limited in different areas of functioning including sitting, standing, walking, and concentrating due to chronic pain. The record, however, does not substantiate the extreme of this assessment . . . . More importantly, this opinion is from April 2015, two years and a half after the [date last insured].

Tr. 21. An examination of the record confirms that Dr. Berríos's opinion is inconsistent with evidence from before the date last insured. See Fogle v. Colvin, No. CV 113-173, 2014 WL

---

[2] In her memo, Plaintiff does not cite to any portion of the record that suggests that the right shoulder calcification occurred prior to September 30, 2012.

7

3925235, at *4 (S.D. Ga. Aug. 8, 2014) ("When the medical record contains an opinion dated after the last insured date that a claimant was disabled prior to the last insured date, that post-insured opinion will be credited when it is consistent with pre-insured date medical evidence."). Dr. Berríos diagnosed Plaintiff with cervicalgia, lumbalgia and muscle spasms. Tr. 305. However, treatment notes from the relevant time period only reflect swelling in Plaintiff's hands, forearm, and neck area, as well as complaints of pain. Tr. 129, 131–32, 134, 135. Plaintiff was treated with pain medication. Id. As the ALJ noted, there is no evidence that treatment modalities such as steroid injections or nerve blocks were recommended. Tr. 20. Further, in a January 2012 examination, Plaintiff did not have any significant range of motion limitations in the neck and back. Tr. 694. She walked with a normal gait (Tr. 697) and had normal movements in her neck and cervical spine, shoulders, and dorsal spine (Tr. 115).

Thus, substantial evidence supports the ALJ's decision to discount the opinion of Dr. Malaret, and by extension, that of Dr. Berríos.

**2. Plaintiff's claim that she underwent CTR surgery on her left hand.**

Plaintiff contends that she underwent CTR surgery on her left hand on November 14, 2013, which the ALJ did not take into consideration. However, while the record reflects that Plaintiff was scheduled for surgery on November 14, 2013, it is not clear whether the surgery constituted CTR surgery on her left hand, or whether the surgery ever occurred. Tr. 256. Further, even assuming that the surgery was to Plaintiff's left hand and proceeded as planned, the operation would have taken place over one year after the date last insured, and thus would have been of limited relevance to the ALJ's RFC determination.

### 3. Plaintiff's claim that the ALJ improperly interpreted "raw" medical evidence.

Plaintiff contends that the ALJ cannot rely on raw medical evidence; rather, he must rely on physicians' opinions to translate that evidence into functional terms. The Social Security regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). In the case at bar, three physicians provided RFC assessments: Dr. Malaret, the medical expert, Dr. Berríos, the treating physician, and Dr. Florentino Figueroa, the State agency medical consultant. As discussed above, the ALJ gave partial weight to the opinions of Dr. Malaret and Dr. Berríos. He also gave substantial weight to Dr. Figueroa's opinion as to Plaintiff's RFC because it was "consistent with the objective and other medical evidence of record." Tr. 22. Dr. Figueroa's opinion does not constitute "raw" medical evidence. See Rodríguez v. Sec'y of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989) (finding that the ALJ did not impermissibly assess RFC himself, but instead relied on the RFC assessment provided by the non-examining medical advisor); Valentín-Rodríguez v. Comm'r of Soc. Sec., No. 12-CV-1488 MEL, 2014 WL 2740410, at *7 (D.P.R. June 17, 2014) (finding no indication that the ALJ interpreted raw data in determining a nuanced RFC for the plaintiff, instead of adopting completely either (1) the RFC determined by the agency doctors, or (2) the RFC determined by the treating physician).

### V. CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of May, 2019.

                                                    s/Marcos E. López
                                                  U.S. Magistrate Judge